UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                    :

IN RE APPLICATION OF GENIAL INSTITUCIONAL   :
CORRETORA DE CAMBIO, TITULOS E VALORES    :        24-MC-348 (JMF)
MOBILIARIOS S.A. AND GENIAL INVESTIMENTOS  :
CORRETORA DE VALORIES MOBILIARIOS S.A.     :        OPINION AND ORDER
FOR AN ORDER SEEKING DISCOVERY                 :
PURSUANT TO 28 U.S.C. § 1782                         :
                                                    :
--------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

        This case involves an application, filed by Petitioners Genial Institucional Corretora de Cambio, Títulos e Valores Mobiliários S.A. and Genial Investimentos Corretora de Valories Mobiliários S.A. (together, "Genial"), for discovery pursuant to 28 U.S.C. § 1782(a) from Respondents Brasil Plural Holdings, LLC ("B.P. Holdings"), Brasil Plural Securities, LLC ("B.P. Securities"), Manuel Maria Monteiro Fernandes Fernandez, and Daniel Pedrosa de A. Sousa (together, "Respondents"). By Order entered on August 9, 2024, the Court granted Genial's application on an *ex parte* basis, albeit "without prejudice to the timely filing of a motion to quash the subpoenas" that the Court's Order authorized Genial to serve. ECF No. 8 ("Aug. 9, 2024 Order"), at 1. Consistent with that invitation, Respondents now move to quash Genial's subpoenas in their entirety. *See* ECF No. 22 ("Resps.' Mem."), at 3-16. In the alternative, Respondents object to particular aspects of the subpoenas and argue that they should be granted reciprocal discovery and that any documents produced should be subject to a protective order designating them as "attorneys' eyes only." *See id.* at 16-25. For the reasons that follow, the Court denies Respondents' motion to quash the subpoenas altogether, strikes one specific document request from one of the subpoenas, denies Respondents' request for a protective order, and grants Respondents' request for reciprocal discovery.

## BACKGROUND

On July 23, 2024, Genial filed a lawsuit against BP Securities, BP Holdings, and Fernandez (together, the "BP Defendants") in Brazil. Genial seeks a declaration recognizing the existence of a *de facto* partnership between Genial and BP Securities. ECF No. 2-2 ("Brazilian Compl."), ¶¶ 1-2. Additionally, Genial seeks a determination of the partnership's assets, along with dissolution of the partnership and payment to Genial of assets that allegedly belong to Genial. *Id.* ¶¶ 1, 63, 94. In the alternative, Genial asks that the BP Defendants be ordered to reimburse all expenses paid (and other resources contributed) by Genial. *Id.* ¶¶ 1, 102-05. Finally, Genial also seeks an injunction barring the BP Defendants from (1) using BP Securities' assets in amounts that exceed the ordinary course of business; or (2) negotiating the sale of Fernandez's shares in BP Holdings without informing third parties about the existence of Genial's claims. *Id.* ¶¶ 2, 106-21.[1] The Brazilian proceeding is currently in "the pleading phase," in which the parties present their factual and legal arguments and make their respective requests to the Brazilian court. Steiner Decl. ¶¶ 12-13.

On July 30, 2024, Genial filed its *ex parte* application here seeking discovery from Respondents for use in the Brazilian proceeding. *See* ECF Nos. 1-3. In particular, Genial sought leave to serve subpoenas for four depositions and seventy-two categories of documents. *See* ECF Nos. 1-1, 1-2. 1-3, 1-4. As noted, on August 9, 2024, the Court granted the application, albeit "without prejudice to the timely filing of a motion to quash the subpoenas and, in the event such a motion is filed, subject to reconsideration." Aug. 9, 2024 Order, at 1.[2] As relevant here,

---

[1]    On August 28, 2024, the Brazilian court denied Genial's request for injunctive relief in part, but ordered BP Securities to inform any potential buyers of the company about the existence of Genial's lawsuit. *See* ECF No. 22-1 ("Steiner Decl."), ¶ 10.

[2]    "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012)

2

the Court found that Section 1782's statutory requirements were met and that the four "so-called *Intel* factors favor[ed] granting the application." Aug. 9, 2024 Order, at 1. The Court observed that only one *Intel* factor — the first, which asks whether the party from whom discovery is sought is a participant in the foreign proceeding — "arguably weigh[ed] against granting the application," at least as to the three Respondents (namely, the BP Defendants) "who are named defendants in the [Brazilian] proceeding." *Id.* But the Court found that Genial had "identif[ied] reasons to believe" that these Respondents would nonetheless "be able to resist discovery in that proceeding" and observed that, "even if the first *Intel* factor cut[] against the application, 'no single *Intel* factor alone is dispositive.'" *Id.* (quoting *In re CBRE Glob. Invs. (NL) B.V.*, No. 20-MC-315 (VEC), 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021)). Accordingly, the Court authorized Genial to serve the subpoenas.

In correspondence between the parties after Genial served the subpoenas, Respondents objected to certain requests, *see* ECF No. 22-4 ("Resps.' Letter"), and Genial made certain concessions, *see* ECF No. 22-5 ("Genial Letter"). In particular, Genial agreed (1) to "limit the timeframe of its discovery requests" to the period after October 1, 2018; (2) "to limit or combine" both document requests and deposition topics "where necessary and feasible in order to avoid duplicative requests"; and (3) that "Respondents can raise attorney-client and work product privilege objections per the subpoenas' instructions." ECF No. 23 ("Genial Mem."), at 17. These concessions notwithstanding, Respondents move to quash the subpoenas altogether. In the alternative, they object to particular aspects of the subpoenas and argue both that they

---

(summary order). Doing so does not violate the due process rights of the subpoenaed party because that party "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)," *id.*, as Respondents do here.

should be granted reciprocal discovery and that any documents produced should be subject to a protective order designating them as "attorneys' eyes only."

## APPLICABLE LAW

It is well established that "Section 1782 applicants must meet certain 'statutory requirements': (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (quoting *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)). If those requirements are met, Section 1782 "authorizes, but does not require, a federal district court" to grant the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In determining whether to exercise that discretion, a district court should consider four factors, commonly known as the "*Intel* factors": (1) whether the person from whom discovery is sought is participating in the foreign proceeding; (2) the nature of the foreign tribunal and its receptiveness to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *See id.* at 264-65; *accord Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). These factors are "neither exhaustive nor dispositive." *Matter of Ord. Seeking Discovery Under 28 U.S.C. § 1782*, No. 24-MC-152 (GHW) (GS), 2024 WL 3569022, at *3 (S.D.N.Y. July 12, 2024), *report and recommendation adopted by* 24-MC-152, ECF No. 22 (S.D.N.Y. July 29, 2024); *see also Frasers Group PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (observing that "[t]he *Intel* factors are not to be applied mechanically" (internal quotation marks omitted)). Additionally, the Supreme Court has

instructed that a district court's exercise of its discretion under Section 1782 should be in keeping with the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp.*, 542 U.S. at 252 (internal quotation marks omitted).

## MOTION TO QUASH

The Court begins with Respondents' contention that Genial's subpoenas should be quashed altogether. Respondents argue that the subpoenas should be quashed as to Sousa for failure to satisfy Section 1782's statutory requirements. *See* Resps.' Mem. 14-16. And they assert that the *Intel* factors call for quashing all of the subpoenas. *See id.* at 3-14.

### A. The Statutory Requirements

Respondents' argument as to the statutory requirements — which is limited to only one requirement (the first) and only one Respondent (Sousa) — can be swiftly rejected because it is borderline frivolous. "[Section] 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). That means it is inclusive of "so-called tag jurisdiction," which results from a party's being served within a district's geographical boundaries. *Id.* at 526 n.7, 527; *see also Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 610 (1990). Here, Sousa "accepted service at Brasil Plural Securities' office" in this district when someone who "confirmed they [were] authorized to accept" accepted the subpoenas on his behalf. Genial Mem. 17. As Sousa nowhere disputes that he was properly served in this manner, it follows that, as Genial argues, he "was 'found' in the district for section 1782 purposes." *Id.*

Respondents contend that, even if Sousa was properly served in the district, the discovery sought must be "relate[d] to Sousa's jurisdictional contacts" and "forum ties." ECF No. 24

("Resps.' Reply"), at 6. That is flat wrong. The cases upon which Respondents rely involved "*specific* personal jurisdiction." *In re del Valle Ruiz*, 939 F.3d at 528 (emphasis added); *see also Matter of Hranov*, No. 21-MC-751 (PKC), 2022 WL 1261827, at *3 (S.D.N.Y. Apr. 28, 2022) ("Hranov does not urge that Deutsche Bank is subject to general jurisdiction in this district, [but] asserts that [] based on its forum contacts . . . Deutsche Bank 'is found' in this District."). But because service was effected on Sousa within the district, he is subject to "general personal jurisdiction." *Loughlin v. Goord*, 558 F. Supp. 3d 126, 139 (S.D.N.Y. 2021). And as Respondents themselves acknowledge, "[g]eneral jurisdiction in the § 1782 context . . . 'permits a court to exercise its power in a case where the subject matter of the suit is unrelated to [the respondent's] contacts.'" Resps.' Mem. 15 (quoting *In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*, No. 22-MC-118 (LAK), 2024 WL 917236, at *2 (S.D.N.Y. Mar. 4, 2024)); *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008).

## B. The *Intel* Factors

Thus, whether the subpoenas should be quashed turns on the four discretionary *Intel* factors. The Court will address each in turn.

### 1. The First Factor

As the Court noted in its August 9, 2024 Order, the first *Intel* factor — whether the party from whom discovery is sought is participating in the foreign proceeding — is Genial's steepest climb. Three of the Respondents — that is, all other than Sousa — are parties to the Brazilian proceeding. *See* ECF No. 3, at 5. And Sousa, too, is deeply entwined in those proceedings: He was formerly a "partner at Genial" and is now "BP Securities' CEO." Resps.' Reply 3. But "the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production," not merely "whether the tribunal has control over the party targeted." *In re*

6

*Ex Parte Application of Porsche Automobil Holding SE*, No. 15-MC-417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016). For that reason, the first *Intel* factor turns not on the "technical classification" of whether Respondents are participants in the Brazilian action but rather whether, "for all practical purposes," the discovery that Genial seeks "is available in the foreign jurisdiction." *Id.* at *7 n.50 (internal quotation marks omitted). Respondents do not appear to dispute that "Brazilian courts lack jurisdiction" to order them "to sit for a deposition or produce documents" because they are not Brazilian entities. Genial Mem. 8. They do claim that Genial can try to obtain discovery through "a letter rogatory pursuant to the Hague Convention." Resps.' Mem. 5. As Genial notes, however, that process "is extremely bureaucratic and time-consuming, and it can take years for its result to be presented." ECF No. 23-1, ¶ 35; *cf. Washington State Inv. Bd. v. Odebrecht S.A.*, No. 17-CV-8118 (PGG), 2018 WL 6253877, at *8 (S.D.N.Y. Sept. 21, 2018) ("Plaintiff has offered persuasive evidence that use of the letters rogatory system will delay this case for a year to a year-and-a-half."). Thus, the Court concludes that Respondents' status as parties to the Brazilian proceeding does not, without more, call for quashing the subpoenas.

2. **The Second Factor**

The second *Intel* factor — the nature of the foreign tribunal and its receptiveness to U.S. judicial assistance — more clearly supports Genial. "A court should deny discovery on the basis of lack of receptiveness only where it is provided with 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782.'" *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)). Respondents' arguments that Brazilian courts "would not be receptive" to evidence obtained through

7

Section 1782, Resps.' Mem. 7, run headlong into contrary evidence, namely a multitude of cases in which courts in this district have allowed Section 1782 subpoenas in connection with Brazilian proceedings in reliance on declarations — just like the ones submitted here — that "courts in Brazil regularly accept evidence that is obtained by way of Section 1782 discovery." *In Re Ibiuna Credito Gestão de Recursos Ltda.*, No. 24-MC-13 (JGK) (RFT), 2024 WL 1077559, at *8 (S.D.N.Y. Feb. 14, 2024), *report and recommendation adopted sub nom. Ibiuna Credito Gestao de Recursos Ltda v. Goldman Sachs Grp. Inc.*, 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024); *see* ECF No. 2, ¶ 23. Respondents' contention that Brazilian courts limit discovery in the "initial phase" of proceedings, Resps.' Mem. 6 is even less convincing. So long as the discovered evidence "is eventually to be used in" a foreign "proceeding," it is not, strictly speaking, even "necessary for the adjudicative proceeding to be pending at the time the evidence is sought" for discovery to be permissible under Section 1782. *Mees v. Buiter*, 793 F.3d 291, 300 (2d Cir. 2015) (quoting *Intel Corp.*, 542 U.S. at 259). It follows that whether more stringent limitations apply at the current stage of the Brazilian proceeding than would apply later is irrelevant to whether the Court should allow discovery pursuant to Section 1782.

3. **The Third Factor**

The third *Intel* factor — whether the request conceals an attempt to circumvent foreign proof-gathering restrictions — also favors Genial, if only slightly. As a preliminary matter, the fact that "discovery is unavailable" in the foreign court "does not authorize denial of discovery pursuant to [Section] 1782." *Mees*, 793 F.3d at 303 (internal quotation marks omitted). Instead, foreign discoverability is simply a "consideration . . . (along with many other factors) when it might otherwise be relevant to the § 1782 application," and one, at that, that "should not be afforded undue weight." *Id.* After all, "[i]f district courts were . . . to refuse discovery" in every

case it was "unavailab[le] in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *Id.* at 302 (internal quotation marks omitted). Additionally, courts are cautioned against "speculative forays into legal territories unfamiliar to federal judges" in deciding whether foreign laws would allow the same discovery being sought. *Id.* at 299.

In this case, Respondents are either Genial's opponents in the Brazilian proceeding or closely related to them, which ordinarily would allow the Brazilian court to order discovery against them, albeit at a later stage of the proceedings and subject to limits under Brazilian law. *See* Resps.' Mem. 9; *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d at 177 ("[T]he opportunity to obtain pretrial discovery in Brazil is limited."). But, again, Respondents do not dispute that, as foreign entities, they would not be directly subject to the Brazilian court's jurisdiction. *See* Genial Mem. 8. Accordingly, it is less clear here than it was *In re Atvos Agroindustrial Investimentos S.A.* and *In re Kreke Immobilien KG*, No. 13-MC-110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), the two cases upon which Respondents rely, that Section 1782 is being used "as a vehicle to avoid an unfavorable discovery decision from a foreign tribunal." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (cleaned up); *see id.* ("[T]his is a case where a German petitioner is seeking discovery from a German respondent for use against a German defendant in a German proceeding."). Further, to the extent that Genial's subpoenas might tip the scales in the Brazilian court by authorizing discovery broader or earlier against Respondents than against Genial, the Court can "lend parity to the disclosure mix" by "condition[ing] relief . . . upon a reciprocal exchange of information," as discussed below.

9

*Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11-MC-354 (RWS), 2012 WL 1059916, at *3 (S.D.N.Y. Mar. 29, 2012) (internal quotation marks omitted).

4. **The Fourth Factor**

The final *Intel* factor — whether the request is unduly intrusive or burdensome — does not call for quashing the subpoenas either. "[W]hether [a] discovery [request] is overbroad or unduly burdensome" is "assess[ed] . . . by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Under that Rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But even if a party's request for discovery is overbroad, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101. In this case, Genial has already agreed to limit its requests in several material respects. *See* Genial Mem. 17. Especially in view of these concessions, Genial's subpoenas are not so incurably broad and burdensome that they must be quashed outright.

Additionally, Respondents' assertion that Genial's requests for information are "far beyond the scope of . . . the Brazilian proceeding" does not withstand scrutiny. Resps.' Mem. 12. The relief Genial seeks in the Brazilian proceeding is recognition of a "de facto partnership" between itself and B.P. Securities, "dissolution" of that partnership, and "condemnation" of Respondents "to pay a substantial part of [their] assets" to Genial as their share of the partnership's assets. Brazilian Compl. ¶¶ 1-2. Part and parcel of Genial's claim is that Fernandez is attempting to "unduly siphon off" funds from the partnership by selling partnership

10

assets to third parties "behind Genial's back." *Id.* ¶17. Thus, "basic financial information" about Respondents — including information about their "finances, organizational structure, transactions, and actions since the beginning of the de facto partnership" — plainly cross the low bar of "relevance" to the Brazilian proceeding. *See Morocho v. Stars Jewelry by A Jeweler Corp.*, 345 F.R.D. 292, 295 (S.D.N.Y. 2024) ("[R]elevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." (internal quotation marks omitted)).

*      *      *      *

In sum, the *Intel* factors are either close calls, as in the first, or weigh in favor of Genial. Weighing them together, the Court adheres to the conclusion that it reached in its August 9, 2024 Order, namely "that, on balance, the *Intel* factors weigh in favor of discovery." Aug. 9, 2024 Order 1. Accordingly, Respondents' motion to quash the subpoenas altogether is denied.

**RESPONDENTS' ALTERNATIVE ARGUMENTS**

For the foregoing reasons, the Court concludes Section 1782's statutory requirements are met and that the *Intel* factors support issuance of the subpoenas — and, by extension, call for denial of the motion to quash. In the alternative, Respondents lodge a host of more targeted objections to the subpoenas. *See* Resps.' Mem. 16-24. They also seek reciprocal discovery and a protective order designating all materials produced pursuant to the subpoenas "attorneys' eyes only." *See id.* at 24-25. The Court will address each issue in turn.

**A. Targeted Objections**

Genial's concessions appear to moot many of Respondents' targeted objections to the subpoenas. Only two of those objections warrant further discussion here. First, Respondents take issue with the subpoenas' use of "any" and "all" language on overbreadth grounds. *See*

Resps.' Mem. 18-19.  For the reasons discussed above, that objection is largely without merit. But the Court concludes it is well taken as to one request: Request No. 7 in the subpoena to B.P. Securities, which demands "[a]ll Documents, Communications, or Correspondence Concerning Funds or Benefits Received."  ECF No. 1-2, at 11.  The term "benefits" is so vague and broad as to be nearly all-encompassing.  Moreover, many of the other requests in the same subpoena cover the same ground.  Accordingly, the Court strikes this one request from the subpoena.

The only other objection warranting attention now is Respondents' assertion that they should be entitled to withhold documents and information pursuant to the privilege law of Brazil. *See* Resps.' Mem. 20-24.  Section 1782 states that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a).  That language "provides for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law." *In re Erato*, 2 F.3d 11, 14 (2d Cir. 1993).  Determining whether the privilege law of a foreign country should be applied in a particular case depends on the "touch base" test, under which "a court applies the law of the country that has the predominant or the most direct and compelling interest in whether communications should remain confidential, unless that foreign law is contrary to the public policy of this forum."  *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 98 (2d Cir. 2020) (cleaned up).  "The country with the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent."  *Id.* (internal quotation marks omitted).

Genial contends that the "touch base" test does not apply to subpoenaed documents held in the United States because it only applies only "to claims of privilege involving *foreign documents*."  Genial Mem. 19.  But that is incorrect.  Genial bases this assertion on one sentence

12

from the Second Circuit's opinion in *Mangouras* — namely, that the "touch base" test is a "traditional choice-of-law 'contacts' analysis to determine the law that applies to claims of privilege involving *foreign documents*," 980 F.3d at 98 (emphasis added) — but that sentence is not even describing the test as it applies in Section 1782 cases. Instead, it is explaining the provenance of the "touch base" test. *See id*. In the very next paragraph, explaining how the "touch base" test operates, the Circuit approvingly cites a district court opinion that applied the test to "documents . . . [that] were located in New York." *Id.* at 99 (internal quotation marks omitted). Genial's argument that the court should not even engage in a "touch base" inquiry here is therefore without foundation.

When a party asserts a privilege against a Section 1782 subpoena, "the burden is on the person who claims the privilege to show entitlement." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011). Although courts in this circuit have not addressed the strength of the showing necessary, other courts have described it as requiring a "reasonable certainty." *See, e.g.*, *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). At this stage, neither party has made arguments specific enough to allow the Court to resolve whether Brazilian privilege law applies here (as seems likely), let alone whether any of the documents or information being sought by Genial would be privileged under whatever law applies. For now, Respondents should produce a log of any documents they withhold on the basis of privilege, and the parties should meet and confer in an effort to resolve any disputes. In the event that the parties cannot resolve a dispute on their own, either side may file a letter motion, not to exceed three pages, seeking relief, and the other side shall file any response, not to exceed three pages, within three business days.

## B. Reciprocal Discovery

Next, Respondents seek reciprocal discovery. *See* Resps.' Mem. 24-25. "Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems." *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996). So, when a party seeks discovery under Section 1782, "a district court [can] condition relief upon that person's reciprocal exchange of information. *Intel Corp.*, 542 U.S. at 262. Courts consider a variety of "discretionary factors" in determining whether to grant reciprocal discovery, including (1) "how closely the reciprocal discovery sought relates to" the already subpoenaed materials, (2) whether the respondent can "initiate its own independent Section 1782 application" instead, (3) "the location of the evidence sought" and its availability in the foreign litigation, (4) "the degree to which the respondent 'has a substantial interest' in the foreign litigation" and (5) "the timing of the request." *In re Porsche Automobil Holding S.E.*, No. 19-MC-166 (RA), 2021 WL 2530277, at *3 (S.D.N.Y. June 21, 2021) (collecting cases).

The Court agrees that reciprocal discovery is warranted in this case. Genial does not dispute that because the proceedings in Brazil have not yet "reache[d] the evidentiary phase," Resps.' Mem. 9, both parties' abilities to effect discovery are strictly limited in those proceedings. *See* Genial Mem. 12 (distinguishing a statement by an expert on the ground that it "refers to the evidentiary phase of . . . litigation."). Allowing Genial to seek discovery from Respondents that is both earlier and broader than what is available to Respondents from Genial would lead to a lack of "procedural parity" between the parties. *Euromepa*, 51 F.3d at 1102. And because Genial is not "found in any district in the United States," Respondents would not be able to seek discovery through an independent Section 1782 petition, again "favor[ing] granting a condition of reciprocal discovery." *Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*,

No. 11-MC-354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012). Finally, as the party directly adverse to Genial in Brazilian court, Respondents have a high "degree . . . [of] interest in the foreign litigation." *Porsche Automobil Holding*, 2021 WL 2530277, at *3.

In response, Genial argues that Respondents' request is deficient because they "do not identify any specific documents, witnesses, or evidence they would seek." Genial Mem. 23. The Court disagrees. "[T]here is no time limitation" for a "request for reciprocal recovery," *Porsche Automobil Holding*, 2021 WL 2530277, at *5, so Respondents were not required to specify their request at this stage, especially given the possibility that the Court might substantially narrow Genial's subpoenas and render the scope of "reciprocal" discovery correspondingly narrowed. It was thus reasonable for Respondents to style their request as "seek[ing] leave to issue subpoenas to each Applicant with discovery requests similar to those sought by Applicants." Resps.' Mem. 25. In light of this ruling, Respondents may now serve subpoenas on Genial. In the event that Genial objects to any request from Respondents, the parties shall confer and attempt to resolve their dispute before seeking relief from the Court.

### C. Protective Order

Finally, Respondents seek a protective order designating any documents produced as "Attorneys' Eyes Only" and "restraining Applicants from using any such discovery for any purpose other than in the Brazilian proceeding." Resps.' Mem. 24. This request is denied. Rule 26(c) of the Federal Rules of Civil Procedure "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (internal quotation marks omitted). "The party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)

(cleaned up).  "An [attorneys' eyes only] designation, which generally limits review of documents to the parties' attorneys and experts, is considered the most restrictive (and thus least often justified) tier of discovery."  *Nanjing CIC Int'l Co. v. Schwartz*, No. 20-CV-7031 (EAW), 2023 WL 6958787, at *5 (W.D.N.Y. Oct. 20, 2023).  Establishing good cause for an attorneys' eyes only designation thus requires "show[ing] that disclosure will result in a clearly defined, specific and serious injury."  *Austin v. Fordham Univ.*, No. 23-CV-4696 (PAC) (GS), 2024 WL 749636, at *3 (S.D.N.Y. Feb. 23, 2024).

Measured against this heightened standard, Respondents do not meet their burden to justify an across-the-board "attorneys' eyes only" designation for all information they are required to produce in response to Genial's subpoenas.  Respondents' only justification for the strict restriction is that they are "already engaged in litigation with Genial in a separate action concerning different claims in this district."  Resps.' Mem. 24; *see Genial Holding Ltda. v. Brasil Plural Secs., LLC*, No. 24-CV-5780 (PAE) (S.D.N.Y. July 30, 2024).  It is true that "Section 1782 petitions should not be used as a back door means of obtaining discovery for use in a case in this country."  *In re Watkins,* No. 24-MC-0023 (JGK) (RFT), 2024 WL 4264900, at *12 (S.D.N.Y. July 26, 2024), *report and recommendation adopted sub nom. Watkins v. Ellesse LLC*, No. 24-MC-23 (JGK), 2024 WL 4582755 (S.D.N.Y. Oct. 25, 2024).  But Respondents' filings do not even include a bare statement that any disclosure would harm them, let alone — as required here —a "non-conclusory" allegation, *MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008), substantiating a "clearly defined" injury, *Austin*, 2024 WL 749636, at *3.  Without a basis on which to conclude any protective order at all is justified, the Court cannot conclude such a restrictive designation should be so broadly applied.

## CONCLUSION

For the reasons stated above, Respondents' motion to quash Genial's subpoenas is DENIED, except as to request 7 in the subpoena to B.P. Securities, *see* ECF No. 1-2, at 11, which is stricken; Respondents' request for a protective order is DENIED; and Respondents' request for reciprocal discovery is GRANTED.  The Court will retain jurisdiction to resolve any disputes that arise in connection with Genial's subpoenas or Respondents' reciprocal discovery.  In the meantime, however, there is no need for this case to remain open.  Accordingly, the Clerk of Court is directed to terminate ECF No. 21 and to administratively close the case.

SO ORDERED.

Dated: January 7, 2025
New York, New York

_____
JESSE M. FURMAN
United States District Judge